2019 PA Super 226

| | | |
|---|---|---|
| MICHAEL AND LINDA, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ROBERT S. SMITH AND RENEE M. | : | |
| SMITH, | : | |
| | : | |
| | : | |
| Appellants | : | |
| | : | No. 2654 EDA 2018 |

Appeal from the Judgment Entered August 2, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2016-10803

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY DUBOW, J.:                    **FILED JULY 25, 2019**

Robert S. Smith and Renee M. Smith (hereafter, Sellers) appeal from the Judgment entered against them on August 2, 2018, in this real estate transaction dispute.  We discern no trial court error of law or abuse of discretion and, therefore, affirm.

We derive the following statement of facts from the trial court's Decision, which is supported by the record.  **See** Trial Ct. Decision, 7/3/18, at 1-4.[1]

Sellers owned vacant real estate in Towamencin Township, Montgomery County.  Buyer, Michael and Linda, LLC, is a homebuilder.

The parties executed an Agreement of Sale in December 2015 for three adjacent parcels of real estate (collectively, the Property).  The three parcels were identified as Lots 25, 26, and 27, which corresponded to parcel

---

[1] Sellers do not challenge the trial court's factual findings on appeal.  **See generally** Sellers' Br.; Sellers' Pa.R.A.P. 1925(b) Statement, 9/27/2018.

identification numbers: 533-00-00943-003, 53-00-00942-004, and 53-00-08142-004, respectively. The total, negotiated purchase price for these lots was $370,000.[2]

The Agreement of Sale included a "time is of the essence" provision. It obligated Sellers to provide good and marketable title, free and clear of all liens and encumbrances. The Agreement of Sale set settlement for January 29, 2016, but also provided for the extension of the settlement date by written agreement of the parties.

Prior to settlement, a title search revealed a mortgage on Lot 27. The parties agreed to settle on the other lots for two-thirds of the negotiated price and, further, to extend settlement on Lot 27 to February 29, 2016. As the new settlement date approached, because the title issue remained unresolved, the parties agreed to extend settlement further until March 14, 2016. At some point thereafter, when it became clear that the title issue was yet unresolved, Buyer proposed a third extension to the settlement date, but Sellers refused.

In April 2016, Buyer learned that the title issue was resolved and, therefore, advised Sellers that settlement could proceed. However, Sellers refused to settle on Lot 27.

In May 2016, Buyer commenced this litigation by Summons, thereafter filing a Complaint asserting breach of contract. Complaint, 8/22/16. Following a bench trial in May 2018, the court found in favor of Buyer, granting its

---

[2] The trial court also noted that Lot 27 was considerably larger than the other two lots. *See* Trial Ct. Decision at 1.

request for specific performance and thus directing Sellers to convey Lot 27 to Buyer.

Sellers timely filed a Post-Trial Motion seeking judgment notwithstanding the court's verdict. Sellers' Post-Trial Motion, 7/12/18. The trial court denied the Motion and entered Judgment in favor of Buyer. Trial Ct. Order, 7/31/18; Trial Ct. Judgment, 8/2/18.

Sellers timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion, citing its prior Decision. *See* Trial Ct. Op., 10/24/18.

Sellers raise the following issues on appeal:

[1.] [Whether] the [t]rial [c]ourt err[ed] as a matter of law in holding that [Sellers] were in breach of the Agreement of Sale because they were unable to provide [Buyer] with clear title to Lot 27[;]

[2.] [Whether] the [t]rial [c]ourt err[ed] as a matter of law in holding that [Sellers] were in breach of the Agreement of Sale by failing to close on the sale of Lot 27 to [Buyer] by the March 14, 2016 [c]losing date[;]

[3.] [Whether] the [t]rial [c]ourt err[ed] as a matter of law in holding that [Sellers'] refusal to agree to continue to extend the March 14, 2016 [c]losing date did not terminate the Agreement of Sale[; and]

[4.] [Whether] the [t]rial [c]ourt err[ed] as a matter of law in granting the extraordinary remedy of specific performance to [Buyer] where [Buyer] had no clear right to relief and justice did not require the relief.

Sellers' Br. at 7-8.

Sellers contend that we should reverse the court's Order denying their Motion for judgment notwithstanding the verdict (JNOV). Our standard of review is well settled.

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Haan v. Wells*, 103 A.3d 60, 69-70 (Pa. Super. 2014) (citation omitted).

Sellers' first three issues, which we address concurrently, concern the proper interpretation of the parties' Agreement of Sale, a real estate contract. As such, the scope of our review is plenary, and our standard of review is *de novo*. *Maisano v. Avery*, 204 A.3d 515, 520 (Pa. Super. 2019).

Sellers assert that (1) they did not breach the Agreement of Sale; (2) they never refused to convey the title they were able to convey; and (3) Buyer allowed the Agreement of Sale to expire when it failed to close on the transaction. Sellers' Br. at 29. In support of these bold assertions, Sellers principally rely on what is commonly known as a "time is of the essence"

provision in their contract. *Id.* at 36. According to Sellers, because the parties had agreed that time was of the essence, upon learning that Sellers were unable to convey clean title to the Property, Buyer was required to terminate the Agreement or "take such title as [Sellers were] able to convey." *Id.* at 25. For the following reasons, we reject these assertions as devoid of merit.

"The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Maisano*, 204 A.3d at 520 (citation omitted). We determine that intent from the written agreement, provided the language employed is clear and unequivocal. *Id.* (citation omitted). "In the absence of an ambiguity, the plain meaning of the agreement will be enforced." *Id.* (citation omitted).

"When parties have deliberately by their agreement or covenants fixed a time for the performance of an act, a court of equity will be very cautious how it interferes in disregard of it, and thus in effect change the contract which the parties have made." *Doughty v. Cooney*, 109 A. 619, 619 (Pa. 1920) (citation omitted).

However, "the law will not require the doing of a futile act." *Messina v. Siberstein*, 528 A.2d 959, 961 (Pa. Super. 1987) (citing *Williams v. Barbaretta*, 59 A.2d 161 (Pa. 1948)). Thus, for example, a buyer's obligation to tender by a fixed date is excused where it is established that the seller is not ready to settle. *Id.* at 62 (declining to enforce a "time is of the essence" provision in a real estate contract where sellers conceded they were unable to convey good title on the settlement date); *but see McKuen v. Serody*, 112

A. 460, 461 (Pa. 1921) (holding that mere allegation that seller was unable to convey title at designated time was insufficient to excuse buyer's non-tender); *Phaff v. Gerner*, 303 A.2d 826, 830-31 (Pa. Super. 1973) (foreclosing specific performance as remedy to buyer where (1) buyer failed to timely tender **and** (2) seller denied that timely tender would have been futile).

The contract at issue here is not ambiguous. Pursuant to their Agreement of Sale, in exchange for Sellers' conveyance of the Property, Buyer agreed to tender the purchase price of $370,000. Complaint, Exh. A (Agreement of Sale, 12/10/15, at 2 ¶¶ 1, 2(A)).

The parties further agreed that the Property "will be conveyed with good and marketable title . . . free and clear of all liens, encumbrances, and easements." Agreement of Sale at 8 ¶ 18(A) (recognizing certain exceptions regarding easements not relevant to this dispute). In the event a title issue arose, the Agreement provides a remedy:

> If [Sellers] [are] unable to give good and marketable title . . . [Buyer] **may** terminate this Agreement by written notice to [Sellers], with all deposit monies returned . . . Upon termination, [Sellers] will reimburse [Buyer] for any costs incurred[.]

*Id.* at 8 ¶ 18(D) (emphasis added). Thus, in its discretion, Buyer was free to terminate the Agreement, without penalty, if Sellers were unable to meet their obligation to provide clean title to the Property. *Id.*[3]

_____

[3] Absent equitable claims, "[g]enerally, a vendee's [*i.e.*, a purchaser's] action for breach of contract to sell land is limited to recovery of the consideration paid plus reasonable expenses incurred." *Baldassari v. Baldassari*, 420

The Agreement of Sale set the date for settlement, January 29, 2016, but also provided for the extension of that date "by mutual written agreement of the parties." *Id.* at 2 ¶¶ 4(A), 5(D). Finally, as highlighted by Sellers, the parties agreed that "[t]he [s]ettlement [d]ate and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and binding." *Id.* at 2 ¶ 5(B).

As found by the trial court, the evidence established that Sellers were unable to convey the Property as agreed. Specifically, Sellers were unable to convey Lot 27 with clean title on the negotiated settlement date. Trial Ct. Decision at 3.[4] Nevertheless, Buyer tendered two-thirds of the negotiated purchase price for the Property, and the parties twice agreed to extend the settlement date, eventually setting settlement for March 14, 2016. *Id.*; *see also* Answer and New Matter, Exh. D1 at 3 (Signed Addendum). These extensions afforded Sellers an opportunity to meet their contractual obligation to convey clean title. Thus, we discern no breach of the Agreement of Sale at this point.

_____

A.2d 556, 561 (Pa. Super. 1980) (footnote omitted). In this case, Paragraph 18(D) of the Agreement of Sale embodies this remedy. Alternatively, there exists a narrow claim for "loss of bargain" damages premised upon a vendor's bad faith. *Id.* at 561-62 (quoting *Seidlek v. Bradley*, 142 A. 914, 915 (Pa. 1928)). Buyer has not pursued such a claim in this litigation.

[4] As noted, Sellers do not challenge the findings of the trial court. *Supra* at n.1. Nevertheless, we note further that Sellers conceded this specific fact **prior to trial**. Answer and New Matter, 12/29/2016, at 2 ¶ 7 (admitting their inability to convey clear and marketable title).

On the extended settlement date, Sellers were not yet able to convey clean title. Trial Ct. Decision at 3. Therefore, as of March 14, 2016, Sellers were in breach of Paragraph 18(A) of the Agreement of Sale. Pursuant to Paragraph 18(D), Buyer was empowered to terminate the Agreement of Sale. Further, Buyer was entitled to the return of deposit monies paid and costs incurred. However, there is no evidence that Buyer terminated the Agreement by written notice to Sellers, nor is there evidence that Sellers returned deposit monies or reimbursed Buyer for its costs. Absent such evidence, and mindful that Paragraph 18(D) affords Buyer sole discretion to terminate, we conclude that the Agreement of Sale remained in force.

Moreover, in light of these facts—in particular, (1) Buyer's partial performance in tendering two-thirds of the negotiated price, (2) Sellers' inability to meet their contractual obligation to convey the Property with clean title, and (3) the parties' multiple agreements to extend settlement for the express purpose of affording Sellers an opportunity to remedy the title issue on Lot 27—we conclude that there is no legal basis to enforce Paragraph 5(B) to Sellers' benefit. The evidence is indisputable that Sellers were not ready to settle on the last negotiated settlement date, March 14, 2016. Therefore, any tender by Buyer on that date would have been futile, and its obligation to tender the balance of the negotiated sale price is excused. *Messina*, 528 A.2d at 961.

Thereafter, in April 2016, Sellers successfully cleared the encumbrance upon Lot 27, thus potentially curing their prior breach of the Agreement of

Sale. This afforded Sellers yet another opportunity to meet their contractual obligation to convey the Property to Buyer. However, in May 2016, upon refusing to complete settlement, Sellers eschewed this opportunity. Accordingly, we conclude that Sellers remained in breach of their contractual obligation. *Maisano*, 204 A.3d at 520.

In their fourth issue, Sellers assert that the trial court erred in granting specific performance to Buyer. Sellers' Br. at 39-41.

Specific performance is an equitable remedy in which the court compels performance of a contract. *Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. 2006). A claim for specific performance "should only be granted where the facts clearly establish the plaintiff's right thereto; where no adequate remedy at law exists; and, where the [court] believes that justice requires it." *Payne v. Clark*, 187 A.2d 769, 771 (Pa. 1963).

Due to the unique qualities of real estate, "[c]ourts in this Commonwealth consistently have determined that specific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice." *Oliver v. Ball*, 136 A.3d 162, 167 (Pa. Super. 2016) (citing *Borie v. Satterthwaite*, 37 A. 102 (Pa. 1897)).

In light of the foregoing analysis, the trial court properly granted specific performance. Sellers clearly violated the terms of the Agreement of Sale when they refused to convey the entire Property, including Lot 27. Their refusal left

Buyer without an adequate remedy at law, and it would be inequitable to deny Buyer relief under the circumstances of this case. *Id.*

Accordingly, we affirm the trial court's denial of Sellers' Motion for JNOV. *Haan*, 103 A.3d at 70.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/19